IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

PHILLIP VAN ZANT,
      Petitioner,

vs.                                   Case No.: 5:05cv208/RS/EMT

FLORIDA PAROLE COMMISSION,
      Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

This matter is before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondent filed and answer seeking dismissal of the petition on the basis that it was untimely filed pursuant to 28 U.S.C. § 2244(d) (Doc. 19). Petitioner responded to the motion to dismiss, insisting that the petition was timely filed (Doc. 21). Also pending is Petitioner's "Motion for Permission to File a Supplemental Pleading" (Doc. 27) which seeks to supplement the record with new evidence of Petitioner's alleged actual innocence, Respondent's response thereto (Doc. 31), and Petitioner's unauthorized reply (Doc. 32).[1]

This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration, it is the opinion of the undersigned that the pleadings and attachments before the court show that the petition is untimely and should be dismissed.

I.      BACKGROUND AND PROCEDURAL HISTORY

The procedural background of this case is undisputed by the parties and established by the state court record. Petitioner was originally convicted and sentenced in the Circuit Court for Leon County, Florida on December 19, 1979, and was released on parole on January 19, 1999 (*see* Doc. 19, Ex. A). Petitioner was accused of violating the conditions of his parole by failing to obey the law in that on or about July 5, 2000, in Clarke County, Georgia, he made harassing phone calls to Virginia Baird Johnston and stalked her (*see* Doc. 21, Appx. A-51). A preliminary hearing was held

---

[1]Pursuant to N.D. Fla. Loc. R. 7.1(C)(2), no reply memoranda may be filed absent a showing of good cause and upon leave of the court.

on October 20, 2000, at the Clarke County Jail, and the hearing officer found that there was probable cause to believe that Petitioner committed the violations and recommended that Petitioner be held in custody pending a final decision of the parole board (*see id.*, A-5, A-6). Petitioner was represented by counsel at the preliminary hearing (*see id.*, A-7). Petitioner was then transferred to Florida and on December 19, 2000, he was served with a notice for a final parole revocation hearing to be held in January, 2001 (*see id.* at A-53). The final revocation hearing began on January 24, 2001, and at the request of Petitioner's counsel, it was continued until June 28, 2001 (*see id.* at A-62–70). The hearing officer found that Petitioner violated Condition 7 of his parole by unlawfully and intentionally making harassing phone calls to Virginia Baird Johnston (*id.*). Based upon this finding, the hearing officer recommended that Petitioner's parole be revoked (*id.*). On August 8, 2001, the Florida Parole Commission (FPC) issued its order revoking Petitioner's parole (*see* Doc. 19, Ex. A).

On September 5, 2001, Petitioner filed a petition for writ of habeas corpus in the Circuit Court for Lafayette County, Florida, challenging the revocation of his parole (*id.*, Ex. B). On October 1, 2001, the circuit court denied Petitioner's writ of habeas corpus (*id.*, Ex. C). On November 2, 2001, the circuit court denied Petitioner's "Amended Motion for Rehearing" (*id.*, Ex. D). Petitioner sought appellate review of the circuit court's decision by filing a petition for writ of certiorari in the Florida First District Court of Appeal (First DCA) (*id.*, Ex. E). On October 3, 2002, the First DCA denied the petition per curiam without written opinion (*id.*, Ex. F). Van Zant v. Fla. Parole Comm'n, 835 So.2d 1117 (Table) (Fla. 1st DCA Oct. 3, 2002). Petitioner did not file a motion for rehearing, nor did he appeal the decision.

On March 6, 2002, while Petitioner's direct appeal was pending, he filed a petition for writ of mandamus in the Circuit Court for Leon County, Florida, again challenging the parole revocation (Doc. 19, Ex. G). On October 16, 2002, the circuit court issued an order dismissing Petitioner's petition as an abuse of the writ on the ground that he could and should have raised his claims in his prior petition (*id.*, Ex. I). Petitioner sought appellate review of the denial of his petition for a writ of mandamus by filing a petition for writ of certiorari with the First DCA (*id.*, Ex. J). On July 8, 2003, the First DCA denied the petition per curiam without written opinion (*id.*, Ex. K). Van Zant v. Fla. Parole Comm'n, 853 So. 2d 414 (Table) (Fla. 1st DCA July 8, 2003).

On July 8, 2003, Petitioner filed a second petition for writ of habeas corpus in the Circuit Court for Escambia County, Florida, again challenging the parole revocation (Doc. 36, Ex. L). On January 8, 2004, the circuit court dismissed the habeas petition as an abuse of the writ (*id.*, Ex. N). On January 27, 2004, Petitioner filed a motion for rehearing with the circuit court (*see* Doc. 21 at 4–5, Ex. A). On May 11, 2004, the circuit court denied the motion for rehearing (*id.*, Ex. A). On

June 10, 2004, Petitioner filed a notice of appeal seeking appellate review of the denial of his habeas petition (Doc. 36, Ex. O).  On July 30, 2004, the First DCA dismissed the appeal for lack of jurisdiction based on Petitioner's failure to timely file his motion for rehearing in the lower court (*id.*, Ex. P).  *See* Van Zant v. Fla. Parole Comm'n, 886 So. 2d 232 (Table) (Fla. 1st DCA July 30, 2004).  Petitioner filed a motion for rehearing and an amended motion which the First DCA denied on November 5, 2004 (*see* Doc. 21 at 5–6, Exs. B, C).  *See* www.1dca.org, Case No. 1D04-2641, docket entries dated Aug. 20, 2004, Sept. 14, 2004, Sept. 29, 2004, Nov. 5, 2004).  On November 23, 2004, the First DCA issued a mandate finalizing its decision (*see* Doc. 21, Ex. C).

Petitioner filed the instant federal habeas petition on October 7, 2005 (Doc. 1 at 1).

Initially, it is noted that although Petitioner's current incarceration resulted from an administrative proceeding of the FPC and not a court, Petitioner is considered "in custody pursuant to the judgment of a State court," and is therefore subject to 28 U.S.C. § 2254 and its attendant restrictions.  *See* Peoples v. Chatman, 393 F.3d 1352 (11th Cir. 2004) (applying one-year period of limitation found in 28 U.S.C. § 2244(d) to federal habeas petition filed by state prisoner incarcerated upon revocation of his parole who sought to challenge his waiver of parole revocation hearing) (citing Medberry v. Crosby, 351 F.3d 1049 (11th Cir. 2003)); *see also* Dill v. Holt, 371 F.3d 1301 (11th Cir. 2004) (holding that state prisoner who challenged legality of revocation of his parole by filing a habeas petition pursuant to 28 U.S.C. § 2241 was "in custody pursuant to the judgment of a State court" within the meaning of the habeas statute applicable to prisoners in such custody, even though his current incarceration resulted from an administrative proceeding of a state parole board, an executive branch agency, instead of a court; thus, § 2254 and it attendant restrictions applied, including the exhaustion requirement); Thomas v. Crosby, 371 F.3d 782 (11th Cir. 2004) (reiterating the holding in Medberry and applying it to a petitioner in custody pursuant to a state court judgment who challenged a decision of the Florida Parole Commission).  The question before this court is whether Petitioner's challenge to the 2001 parole revocation is timely.

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment.  The limitation period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

  (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1).

  Petitioner has not asserted that a government-created impediment to his filing existed, or that he bases his claim on a right newly recognized by the Supreme Court. Additionally, Petitioner does not argue that § 2244(d)(1)(D) applies, although he does assert that in November or December of 2006, he obtained new evidence, specifically, a transcript of two tapes from Virginia Johnston's answering machine, that demonstrates his actual innocence (*see* Doc. 27 at 1; Doc. 32 at 6). This new evidence is relevant to two of Petitioner's habeas claims, Grounds One and Four. In Ground One, Petitioner claims that the evidence did not establish that he violated Georgia law; therefore, there was not sufficient evidence to support the parole revocation (Doc. 1 at 4, continuation pages). In Ground Four, Petitioner claims that he was denied due process because the hearing examiner failed to produce the tapes at the revocation hearing, despite Petitioner's request that he do so, and simply allowed Ms. Johnston to testify regarding the content of the tapes (Doc. 1 at 5, continuation pages). Petitioner asserts that the transcript of the answering machine tapes demonstrate that he was not the person who made the phone calls, and even if he was the person who made them during the time period that Ms. Johnston said he made them, the messages show that he did not make the calls with the intent to harass her, and conversations did not ensue from the phone calls; therefore, the phone calls did not violate Georgia law (*see* Doc. 27, Supplemental Pleading ¶¶ 2–9; Doc. 32 ¶ 10). Petitioner concedes he knew of the existence of the answering machine tapes prior to the final revocation hearing.[2] Furthermore, he has failed to show that he, through his counsel, could not have obtained the tapes or a transcript of them through the exercise of due diligence prior to the final revocation hearing. Petitioner submitted his own transcription of a hearing on December 19, 2000, at which the Florida hearing officer served him with a notice of hearing for the final parole revocation hearing (*see* Doc. 12, Appx. at A-53–55). According to the transcript, the hearing officer served Petitioner with a copy of the notice of hearing which tentatively set the final hearing for

---

[2] Petitioner filed with this court a letter to Norman Haley, Petitioner's counsel at the preliminary hearing conducted in Georgia, in which Petitioner recalls that prior to the preliminary hearing, Mr. Haley told Petitioner that he listened to the answering machine tapes (*see* Doc. 12, Appx. A7).

January 4, 2001 (*id*.). The hearing officer informed Petitioner of his rights, including the right to disclosure of evidence that would be used against him at the final hearing, and the right to examine the evidence and confront and cross-examine the adverse witnesses (*id*.). Petitioner told the hearing officer that he wanted Ms. Johnson's credit card records and bank records and that he wanted four people to appear as witnesses, but he did not request the answering machine tapes or a transcript of the tapes for the final hearing (*see id.*). The Summary of Final Parole Revocation Hearing, submitted by Petitioner in the instant proceeding, shows that Petitioner was represented by counsel during the final revocation proceedings, and his counsel had obtained a continuance of the hearing to June 28, 2001, to obtain additional information and evidence (*see id.* at A-62, A-69). The fact that Petitioner did not actually obtain the transcript of the tapes until late in 2006 does not mean that until then he was unable to obtain it or discover the content of the tapes through the exercise of due diligence. Petitioner has failed to show that the factual predicate of any of his federal habeas claims could not have been discovered through the exercise of due diligence prior to the date his parole revocation became final; therefore, he has failed to show that § 2244(d)(1)(D) is the appropriate statutory trigger for the federal limitations period. Accordingly, the statute of limitations must be measured from the remaining trigger, which is the date on which Petitioner's parole revocation became final. *See* 28 U.S.C. § 2244(d)(1).

In the instant case, Petitioner's parole revocation became final by the conclusion of direct review on October 19, 2002, the date the time expired to file a motion for rehearing of the First DCA's denial of Petitioner's petition for writ of certiorari (*see* Doc. 19, Ex. F; Fla. R. App. P. 9.330(a)). Therefore, the federal limitations period began to run on October 20, 2002, and expired one year later, on October 20, 2003.

This court must next address whether the limitations period was tolled pursuant to statutory or equitable tolling principles. Section 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The United States Supreme Court held that "an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Artuz v. Bennett, 531 U.S. 4, 8, 121 S. Ct. 361, 364, 148 L. Ed. 2d 213 (2000). State laws and rules "usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Id.* (citations omitted).

The Supreme Court recently held that time limits are filing conditions. Pace v. DiGuglielmo, 544 U.S. 408, 414, 417, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005). Thus a post-conviction

application that is untimely under state law does not qualify for statutory tolling.  *Id.*; *see also* Webster v. Moore, 199 F.3d 1256, 1258–59 (11th Cir. 2000).  Similarly, a state petition that does not comply with a state rule requiring a written oath is not "properly filed."  Hurley v. Moore, 233 F.3d 1295 (11th Cir. 2000).  Although Hurley preceded Bennett, its validity was not affected by it.  *See* Drew v. Dep't of Corrections, 297 F.3d 1278, 1285 (11th Cir. 2002).

The Eleventh Circuit recently considered another instance in which a motion is not properly filed — "when a motion is filed in a court that lacks jurisdiction to hear it."  Estes v. Chapman, 382 F.3d 1237, 1239 (11th Cir. 2004).  The Estes court noted that Bennett had left that possibility open, albeit in dicta: "If, for example, an application is erroneously accepted by the clerk of a court lacking jurisdiction . . . it will be pending, but not properly filed."  Estes, 382 F.3d at 1239 (quoting Bennett, 531 U.S. at 9).  The Estes court concluded that, contrary to the state's argument, the Georgia Supreme Court, where Mr. Estes' application was filed, had jurisdiction, so the limitation period was tolled.  Nevertheless, it appears to be settled that if a petitioner's post-conviction filing is filed in a court that lacks subject matter jurisdiction, the limitations period would not be tolled.

On the other hand, a state court's determination that an application for post-conviction relief is subject to a state procedural bar does not render the application "improperly filed," since "[o]nly individual claims, and not the application containing those claims, can be procedurally defaulted under state law . . ."  Bennett, 531 U.S. at 8.  Additionally, a state post-conviction challenge dismissed because it was brought pursuant to the "wrong statutory vehicle" was "properly filed" within the meaning of § 2244(d)(2).  Delancy v. Fla. Dep't of Corrections, 246 F.3d 1328 (11th Cir. 2001).  In Delancy, the Eleventh Circuit applied Bennett in holding that Mr. Delancy had filed a post-conviction challenge to his consecutive sentences with the state trial court, pursuant to Florida Rule of Criminal Procedure 3.800, but the state court dismissed the motion on the ground that the claims raised therein should have been brought in a Rule 3.850 motion filed in the same state court.  *Id.* at 1330.  The Eleventh Circuit, following the reasoning of Bennett, distinguished the question "whether an application has been 'properly filed' . . . from the question whether the claims contained in the application are meritorious and free of procedural bar."  *Id.*  The court determined that the district court erred in "looking beyond the face of Delancy's Rule 3.800 motion to consider the individual claims (i.e., whether they are challenges to consecutive sentences or to illegal sentences)," and concluded that the Rule 3.800 motion was "properly filed" because it, "on its face, met state procedural and filing requirements."  *Id.* at 1330–31.

Finally, a state post-conviction motion that was denied as successive was "properly filed" for AEDPA tolling purposes.  Weekley v. Moore, 244 F.3d 874 (11th Cir. 2001).

Case No.: 5:05cv208/RS/EMT

In the instant case, the state court record conclusively establishes that while Petitioner's direct appeal was pending, he filed a petition for writ of mandamus in the Circuit Court for Leon County (Doc. 19, Ex. G). Although Respondent contends that the petition was not properly filed for federal tolling purposes because the state court denied it as an abuse of the writ, this application of the state procedural bar did not render the petition improperly filed. *See* Bennett, 531 U.S. at 8; Weekley, 244 F.3d 874.

While the mandamus action was pending, Petitioner filed his second state habeas petition (Doc. 36, Ex. L). As with the mandamus petition, the circuit court dismissed it on procedural grounds; therefore, the habeas petition was also properly filing for federal tolling purposes. The next issue is the period of time that the second habeas action remained pending. Petitioner contends that the habeas petition remained pending until November 23, 2004, upon issuance of the mandate of the First DCA on appeal of the circuit court's decision. According to Bennett, however, the appeal was not properly filed for federal tolling purposes because the First DCA dismissed the appeal for lack of jurisdiction based on Petitioner's failure to timely file his motion for rehearing in the lower court (Doc. 36, Ex. P). *See* Van Zant v. Fla. Parole Comm'n, 886 So. 2d 232 (Table) (Fla. 1st DCA July 30, 2004). Petitioner concedes that he filed the appeal on June 10, 2004, over thirty days after the circuit court rendered its final order dismissing his habeas petition, and he concedes that his motion for rehearing of the circuit court's order was filed over ten days from the date the order was filed (*see* Doc. 21 ¶ ¶ 10–13; *see also* Fla. R. Civ. P. 1.530(b)). The fact that the circuit court ruled on Petitioner's belated motion for rehearing did not bestow jurisdiction on the appellate court to consider the appeal. *See* Holley v. State, 943 So. 2d 903 (Fla. 1st DCA 2006) (court was without appellate jurisdiction where notice of appeal was untimely and untimely motion for rehearing did not postpone rendition of lower court's final order); Martin v. Fla. Dep't of Corr., 768 So. 2d 1150 (Fla. 1st DCA 2000) (untimely motion for rehearing does not postpone rendition of final order). Because the state appellate court rejected Petitioner's appeal as untimely, it was not "properly filed" within the meaning of § 2244(d)(2), and he is not entitled to statutory tolling for the period that the appeal was pending. *See* Pace v. DiGuglielmo, 544 U.S. at 414; Spottsville v. Terry, 476 F.3d 1241, 1245 (11th Cir. 2007). Because Petitioner's appeal of the second habeas petition was not properly filed, the second habeas action was pending for federal purposes until February 8, 2004, upon expiration of the thirty-day period for filing a notice of appeal. *See* Fla. R. App. P. 9.140(b)(3); *see also* Spottsville, 476 F.3d at 1245. Petitioner does not allege that he filed any other post-conviction applications that qualified for statutory tolling of the federal limitations period after February 8, 2004. Furthermore, more than one year elapsed from that date to October 7, 2005, the

date he filed the instant federal petition (*see* Doc. 1 at 10). Therefore, the instant petition is untimely.

Petitioner contends that he is entitled to review of his federal petition because he has obtained new evidence demonstrating that he is innocent of the parole violation (*see* Doc. 21 at 16). Even if the court assumes that an "actual innocence" exception to the limitations period exists, Petitioner has not made a colorable showing of actual innocence under Schlup v. Delo, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).

In Schlup, the Supreme Court set forth the standard of proof governing a habeas petitioner's procedural claim of actual innocence: the petitioner must show that constitutional error "probably resulted" in the conviction of one who is actually innocent. *Id.*, 513 U.S. at 324, 326–27. A mere allegation of innocence is not enough; "[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324.

The Schlup Court went on to make several observations about this standard. With respect to the term "probably resulted," the Court clarified that, "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.*, 513 U.S. at 327, 330 (emphasis added). With respect to the term "reasonable juror," the Court instructed: "It must be presumed that a reasonable juror would consider fairly all of the evidence presented. It must also be presumed that such a juror would conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt." *Id.*, 513 U.S. at 329. Analogizing this standard to the applicable standard in parole revocation hearings, Petitioner must show that it is more likely than not that no reasonable examiner would have concluded that the State proved by a preponderance of the evidence that a violation of the conditions of release occurred.

In assessing the adequacy of the petitioner's showing of innocence, the district court "is not bound by the rules of admissibility that would govern at trial." *Id.* Instead, the court is allowed also to consider "the probative force of relevant evidence . . . 'including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.'" Schlup, 513 U.S. at 328 (emphasis added) (quoting Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U.Chi.L.Rev. 142, 160 (1970)).

In the recent decision of House v. Bell, --- U.S. ---, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006), the Court did not alter the standard set forth in Schlup. It reiterated that standard, emphasized certain features of it, and evaluated the evidence developed in House's federal habeas proceeding under that standard. The Court did note, as a preliminary matter, that the parties in that case did not dispute that House had presented new reliable evidence. House, 126 S. Ct. 2064, 2077 ("There is no dispute in this case that House has presented some new reliable evidence; the State has conceded as much." (citations to record omitted)). In addition, because the district court in House held an evidentiary hearing, a decision the State did not challenge, the Court cautioned that it had no occasion to elaborate on Schlup's observation that the court may consider how certain factors bear on the probable reliability of the petitioner's evidence. House, 126 S.Ct. at 2077.

In the instant case, Petitioner asserts the following in support of his claim that he is innocent: (1) although he was charged with making harassing phone calls to Virginia Johnston on or about July 5, 2000, Ms. Johnston did not testify that Petitioner called her on July 5, 2000, and when Petitioner's counsel questioned her about that date, she testified that she could not remember that far back; (2) police investigator Jeff Cole testified that he obtained Ms. Johnston's phone records, and the phone records did not indicate any repeated phone calls; (3) although Ms. Johnston accused Petitioner of calling her until the date of his arrest on July 27, 2000, police investigator Jeff Cole testified that Ms. Johnston's phone records from July 11–26 showed no phone calls from Petitioner's area code, but the records showed three phone calls from Ms. Johnston's phone to Petitioner's phone number; (4) when Petitioner's counsel asked Ms. Johnston why she was calling Petitioner, Ms. Johnston testified that she was calling him to tell him to quit calling her, but the phone records did not support her accusation; (5) Ms. Johnston testified that Petitioner was calling her to try to save their relationship, thus proving that Petitioner did not call with the intent to harass her; (6) to constitute a violation of Georgia law, which was the basis for the parole revocation, a person must call another person repeatedly for the purpose of harassing them, but Mr. Cole testified that phone records he obtained did not indicate Petitioner made repeated calls; (7) on December 8, 2000, the criminal charges against him for stalking and making harassing phone calls were dismissed; (8) at the revocation hearing, Petitioner submitted evidence that he passed a polygraph examination concerning the phone calls; (9) the transcript of Ms. Johnston's answering machine tapes shows that conversation did not ensue during the calls, which is an element of Georgia's harassing phone call statute; (10) the transcript of the tapes shows that Petitioner called Ms. Johnston to tell her about an emergency, not to harass her; and (11) Petitioner made the phone calls reflected in the transcript two months prior to the phone records submitted at the hearing (*see* Doc. 1 at 4-a–4-c; Doc. 12 at 6–12; Doc. 21 at 16–20; Doc. 27, Supplemental Pleading at 4–6; Doc. 32 at 6–8).

The only evidence cited above that was not submitted at the final revocation hearing is the transcript from the answering machine tapes; thus, the transcript is the only "new" evidence. The transcript does not, however, indicate that Petitioner is innocent of the parole violation. The parole conditions that Petitioner was accused of violating were the following:

> 1. Violated Condition 7 by failing to obey all laws, ordinances, or statutory conditions of Parole in that on or about July 5, 2000, in Clarke County, Georgia, you did unlawfully and intentionally make harassing phone calls to Virginia Baird Johnston, by repeatedly calling said victim, after being told by the victim not to call.
> 2. Violated Condition 7 by failing to obey all laws, ordinances or statutory conditions of Parole in that on or about July 5, 2000, in Clarke County, Georgia, you did maliciously, and repeatedly follow or harass Virginia Baird Johnston.

(*see* Doc. 2, Notice of Hearing on Parole Violation). The Georgia law which Petitioner was accused of violating provided as follows:

> (a) It shall be a misdemeanor for any person, by means of telephone communication in this state, to:
>
> (1) Make any comment, request, suggestion, or proposal which is obscene, lewd, lascivious, filthy, or indecent;
>
> (2) Make a telephone call, whether or not conversation ensues, without disclosing his identity and with intent to annoy, abuse, threaten, or harass any person at the called number;
>
> (3) Make or cause the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number; or
>
> (4) Make repeated telephone calls, during which conversation ensues, solely to harass any person at the called number.
>
> (b) Any person who knowingly permits any telephone under his control to be used for any purpose prohibited by this Code section shall be guilty of a misdemeanor.

Ga. Code Ann. § 45-5-21.

At the parole revocation hearing, the hearing officer heard testimony from Virginia Baird Johnston; Detective Charles Ivey from the Athens Police Department; Captain Cole from the Clarke County Sheriff's Office; Lafreda Baird, Virginia's mother; and Petitioner (*see* Doc. 21, Appx. A-62–70). The hearing officer also considered the following exhibits: (1) Certificate of Parole, (2) FPC Warrant, (3) Notice of Hearing, (4) Letter from Petitioner's attorney, dated 1/12/01, requesting

that the hearing be postponed, (5) entry of nolle prosequi dated 12/4/00,[3] (6) letters and affidavit from Lena Van Zant and Roy Van Zant, Petitioner's mother and brother, (7) checks requested from Virginia Baird Johnston, (8) VISA records requested from Virginia Baird Johnston, (9) copies of money orders to Virginia Baird Johnston, (10) letter to Petitioner's attorney and test results from polygraph test conducted by Arney Herrin (*id.* at A-62). The hearing officer made the following findings:

> 1st Allegation: Announced a finding of guilty of violation of Condition 7, by failing to obey all laws, ordinances, or statutory conditions of Parole in that on or about July 5, 2000, in Clarke County, Georgia, did unlawfully and intentionally make harassing phone calls to Virginia Baird Johnston, by repeatedly calling said victim, after being told by the victim not to call, based on sworn testimony given by Virginia Baird Johnston that somewhere around the 4th or 5th of July, she asked the parolee to quit calling her and he continued to do so, filling up her answering machine and causing her to change her phone number. This finding was also made considering Detective Cole's testimony that Virginia Baird Johnston told him that on July 5, 2000, she advised the parolee that the relationship was over and she was forced to change her phone number on 7/10/00, due to the number of phone calls.
>
> 2nd Allegation: Announced a finding of not guilty of violation of Condition 7, by failing to obey all laws, ordinances or statutory conditions of parole in that on or about July 5, 2000, in Clarke County, Georgia, did maliciously and repeatedly follow or harass Virginia Baird Johnston, based on lack of direct testimony or evidence to substantiate the violation.

(*id.* at A-69).

Although Petitioner is correct that the new evidence, i.e. the transcript of two of Ms. Johnston's answering machine tapes, shows that conversation did not ensue, this only proves that conversation did not ensue for the time period covered by the tapes, and that Petitioner's conduct did not appear to satisfy one of four types of conduct proscribed by the statute. Furthermore, although Petitioner states that the transcript shows that he called Ms. Johnston to tell her about an emergency, not to harass her, only the first three messages mention an emergency, the next two calls on that day, made within eight minutes of the last "emergency" message do not mention an emergency; indeed, the last call pleads with Ms. Johnston to pick up the phone and talk to him (*see* Doc. 32, attached transcript). The next recorded calls were placed to Ms. Johnston on a Thursday; the first three calls were not completed because Ms. Johnston would not pay for them; the next message, left nine minutes later, pleaded with Ms. Johnston to pick up the phone, and the next one, placed two hours later, was a hang-up (*id.*). The next recorded calls were placed to Ms. Johnston

---

[3]The Entry of Nolle Prosequi states that the nolle prosequi was entered on the following grounds: (1) "[t]he Solicitor's assessment of the public interests and the interests of justice warrant termination of prosecution," and (2) "Defendant is currently in Florida for a parole violation." (Doc. 21 at A-50).

Case No.: 5:05cv208/RS/EMT

on Sunday, and the first one was not completed because Ms. Johnston would not pay for it, and the next ten calls were hang-ups (*id.*).  The next recorded call was placed on Monday by Petitioner's brother, and Petitioner asserts that the date of this call was July 31, 2000, after Petitioner's arrest on July 27, 2000, the prior Thursday (*see id.*; Doc. 32 at 7).  Accepting Petitioner's contention that the transcript demonstrates that his intent in placing the first three calls was to inform Ms. Johnston of an emergency, the transcript does not impeach Ms. Johnston's testimony that around July 4 or 5, she told Petitioner to stop calling her, but he continued to do so causing her to change her phone number on July 10.  Likewise although Petitioner asserts that he made the calls reflected in the transcript two months prior to the phone records obtained by Jeff Cole, which covered the period July 11–26, 2000 (*see* Doc. 12, Appx. A-33–48), this does not impeach Ms. Johnston's testimony that on or about July 5, she told Petitioner to stop calling her, but he did not.  The undersigned concludes that Petitioner has failed to proffer new reliable evidence showing that it is more likely than not that no reasonable parole examiner would have convicted him in light of the "new" evidence.  Therefore, Petitioner failed to demonstrate that he qualifies for an exception to the time bar.

For the aforementioned reasons, it is hereby **ORDERED**:

That Petitioner's "Motion for Permission to File a Supplemental Pleading" (Doc. 27) is **GRANTED** as the undersigned has considered Petitioner's additional material in this Report and Recommendation.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DISMISSED with prejudice** as untimely.

At Pensacola, Florida, this 29th day of March 2007.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**

Case No.: 5:05cv208/RS/EMT